UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80190-CIV-ALTMAN

EDWIN DEJESUS,

     *Petitioner*,

*v.*

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

     *Respondent.*

_____/

## ORDER

     The Petitioner, Edwin DeJesus, was convicted in Florida state court of first-degree murder and attempted robbery (both with a firearm) and sentenced to consecutive terms of life in prison. Having tried—and failed—to have this conviction (and sentence) overturned in the state courts, he now brings this *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. *See* Petition [ECF No. 1]. For the following reasons, we **DISMISS** Grounds One, Two, Three (in part), Four, and Five of the Petition as procedurally barred and **DENY** Grounds Three (the other part), Six, and Seven on the merits.

### THE FACTS

     The State of Florida indicted the Petitioner on seven counts: one count of first-degree murder with a firearm (Count 1); two counts of attempted felony murder with a firearm (Counts 2 and 3); and four counts of attempted robbery with a firearm (Counts 4, 5, 6, and 7). *See* Indictment [ECF No. 9-2] at 2–5. On the morning of trial, the State dismissed Counts 2, 3, 5, 6, and 7. *See* Nolle Prosse [ECF No. 9-2] at 7; Trial Tr. [ECF No. 9-5] at 4 ("There were certain counts that were nol [sic] prossed. We're going forward on one count of first degree murder with a firearm and one count of [attempted robbery with a firearm]."). On January 6, 2011, a Florida jury found DeJesus guilty of Counts 1 and 4

of the Indictment, *see* Verdict [ECF No. 9-2] at 9–11, and the judge sentenced him to a mandatory life term on Count 1 and a consecutive life term for Count 4, *see* Judgment and Sentencing Orders [ECF No. 9-2] at 13–17.

DeJesus appealed his conviction and sentence to Florida's Fourth District Court of Appeal (the "Fourth DCA"), raising two arguments. *See* First Notice of Appeal [ECF No. 9-2] at 19. *First*, DeJesus claimed that "the trial court abused its discretion when it denied the [Petitioner's] motion for mistrial brought forward during the State's closing argument" because "[t]he prosecution improperly, and without any supporting evidence, bolstered its case against the [Petitioner] by interjecting 'facts' regarding characteristics of the victim's neighborhood to provide 'proof' that the State's witnesses were telling the truth." Initial Br. [ECF No. 9-2] at 33. Put another way, DeJesus complained that the prosecutor improperly used extraneous facts to bolster the credibility of the State's witnesses. *See id.* at 33–37. *Second*, DeJesus argued that "[t]he trial court committed fundamental error when [it] allowed the State to identify the victim to the jury through both of his sons." *Id.* at 41. Both of DeJesus's claims relied solely on Florida law and did not cite to (or otherwise rely on) the U.S. Constitution, a federal statute, or any federal-court decision. *See generally id.*

On June 5, 2013, the Fourth DCA issued a written opinion affirming DeJesus's conviction and sentence. *See DeJesus v. State*, 115 So. 3d 1029, 1031 (Fla. 4th DCA 2013). The court held that trial counsel "made a general objection to the argument concerning the neighborhood, [and so] it failed to preserve the issue for appellate review." *Id.* at 1030. Even if the argument had been preserved, the court said, the prosecutor's comments "were not so inflammatory as to deprive the [Petitioner] of a fair trial"—and, as a result, the trial court didn't abuse its discretion when it denied the motion for a mistrial. *Id.* at 1030–31. The Fourth DCA then disposed of DeJesus's second argument, noting that, while Florida law generally prohibits "a member of the deceased victim's family" from identifying the victim at trial, "it [was] not clear whether there were other witnesses available to identify the victim."

*Id.* at 1031 (quoting *Scott v. State*, 256 So. 2d 19, 19–20 (Fla. 4th DCA 1971)). In either event, the court added, any error was harmless since "neither son became emotional while on the stand[ ] [a]nd their testimony was relevant to other aspects of the crime, as they witnessed the aftermath of the shooting." *Id.* The Fourth DCA entered its mandate on July 9, 2013. *See* Direct Appeal Mandate [ECF No. 9-2] at 81.

On December 9, 2013,[1] DeJesus filed a *pro se* "Motion for Post-Conviction Relief" pursuant to FLA. R. CRIM. P. 3.850. Postconviction Motion [ECF No. 9-2] at 83–88. The Postconviction Motion advanced only one claim: that trial counsel was ineffective "when [he] waived [DeJesus's] right to a speedy trial" without DeJesus's consent (the "Initial Ground"). *Id.* at 86–87.

Almost a year later, on November 4, 2014, DeJesus retained postconviction counsel to file an amended Rule 3.850 motion. *See* Amended Postconviction Motion [ECF No. 9-2] at 103–18. This Amended Postconviction Motion asserted four more ineffective-assistance claims: (1) that "trial counsel's failure to object to the State's identification of the decedent [through] two of his sons resulted in prejudicial testimony offered against the Petitioner," *id.* at 108 ("Amended Ground One"); (2) that "[d]efense counsel made the wrong objection [during closing arguments] which was overruled[,] placing [an] inappropriate and prejudicial argument before the jury," *id.* at 109 ("Amended Ground Two"); (3) that trial counsel was ineffective in failing to object to the testimony of Officer Durso, which "resulted in the admission of irrelevant, inflammatory[,] and prejudicial testimony," *id.* at 114 ("Amended Ground Three"); and (4) that trial counsel was ineffective for failing to call

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." J*effries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

DeJesus's mother (Sinatra Liles) to testify as an alibi witness, since her "testimony puts the Petitioner at a different location at the time of the shooting," *id* at 115–16 ("Amended Ground Four").[2]

On February 17, 2016, the state postconviction court granted in part and denied in part DeJesus's 3.850 motions. The court summarily denied the Initial Ground, finding "counsel's [speedy trial] waiver to be a reasonable strategic decision" that didn't constitute deficient performance. Order Granting in Part and Denying in Part Postconviction Motion [ECF No. 9-2] at 147–48. Next, the state postconviction court denied Amended Grounds One and Two, noting that "[w]here an appellate court—in a written opinion—has found that no error occurred on a particular issue, a defendant is precluded from showing that the alleged error rose to the level of prejudice required [for an ineffective assistance of counsel claim]," and adding that "a defendant may not raise an issue in a postconviction motion that has already been raised on direct appeal." *Id.* at 149–50 (cleaned up). As to Amended Ground Three, the state court found that Officer Durso's "objectionable" testimony was only minimally prejudicial since DeJesus could not show "that the outcome of his trial would have been different" had the comments not been made. *Id.* at 150–51.

But the state postconviction court didn't immediately deny Amended Ground Four. To the contrary, the court found that "[DeJesus] has stated a sufficient claim of ineffective assistance of counsel in Amended Ground Four, and further finds that there is nothing in the record to conclusively refute such allegations." *Id.* at 154. The court thus set an evidentiary hearing on Amended Ground Four and summarily denied DeJesus's other claims. *Id.* On November 29, 2016, DeJesus filed a motion to amend his remaining postconviction claim (*i.e.*, Amended Ground Four), arguing that trial counsel

---

[2] Although the Amended Postconviction Motion didn't expressly discuss the Initial Ground, that claim wasn't deemed abandoned because the Amended Postconviction Motion "incorporated by reference" DeJesus's original *pro se* Postconviction Motion. Amended Postconviction Motion [ECF No. 9-2] at 104.

was *also* ineffective for failing to call a second alibi witnesses, Anna Cortes.[3] *See* Mot. to Amend [ECF No. 9-2] at 157–59. When the state court permitted the amendment, *see* Order Granting Mot. to Amend [ECF No. 9-2] at 162–65, DeJesus filed an Amendment to Amended Ground Four, *see* Amendment to Amended Ground Four [ECF No. 9-2] at 167–78. The state postconviction court held an evidentiary hearing on Amended Ground Four over three days: April 20, 2018; May 2, 2018; and May 30, 2018. *See* Order Denying Amended Ground Four [ECF No. 9-2] at 236.

On August 1, 2018, the state postconviction court denied Amended Ground Four, finding that DeJesus had failed to show that counsel was ineffective for calling either alibi witness. In saying so, the court held that neither witness would have been sufficient to sustain a viable alibi defense. *See id.* at 240 ("[B]ased upon Liles' testimony, the Defendant was not with Liles at the time of the victim's murders. Furthermore, [defense counsel] testified [as to] the weakness of Liles' alibi testimony, as well as her bias toward [DeJesus] because she was his mother"); *id.* at 241 ("[Ms. Cortes] was unable to testify with specificity about [DeJesus's] exact location at the time of the murder."). The court also noted that defense counsel had discussed the viability of the alibi defense with DeJesus and that, together, counsel and DeJesus had concluded the defense would fail because, among other things, "the murder scene was in close proximity to the homes of [Liles and Cortes]." *Id.* at 242. Given these flaws in the alibi defense, the court determined that DeJesus "failed to show a reasonable probability the outcome of the trial would have been different if an alibi defense had been presented." *Id.* at 247–48.

In his appeal of the denial of these postconviction motions, *see* Second Notice of Appeal [ECF No. 9-2] at 250, DeJesus advanced only the following three claims: (1) that the postconviction trial court erred by denying the Initial Ground without "conducting an evidentiary hearing to determine

---

[3] The state-court record—indeed, even the Petitioner himself—sometimes spells her name with a "z" (as in "Cortez"). For the sake of consistency, we'll use the "s" (as in "Cortes").

whether the [speedy-trial] waiver was reasonable over [DeJesus's] express objections," Second Initial Br. [ECF No. 9-2] at 269; (2) that the alibi witnesses *could* have assisted in a misidentification defense and that the postconviction trial court had "overlooked or failed to account for the substantial inconsistencies and grounds to doubt the identifying witnesses," *id.* at 277–78; and (3) that the postconviction trial court erred in summarily denying Amended Ground Three, since "[i]t only takes one racially charged statement to poison the juror's mind towards the defendant and undermine the presumption of innocence," *id.* at 285–86. On December 12, 2019, the Fourth DCA summarily affirmed the state postconviction court's decision. *See DeJesus v. State*, 287 So. 3d 575, 575 (Fla. 4th DCA 2019). The Fourth DCA issued its mandate on January 10, 2020. *See* Postconviction Appeal Mandate [ECF No. 9-3] at 79. DeJesus filed this Petition on February 11, 2020. *See generally* Petition.

## THE LAW

### I.      The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

## II.      AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas corpus petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

In our case, the Respondent concedes that the Petition is timely. *See* Response to Order to Show Cause ("Response") [ECF No. 9] at 12 ("[B]ased on Respondent's calculations, it appears the instant Petition is timely filed pursuant to 28 U.S.C. § 2244(d)."). We'll accept that waiver and treat

the Petition as timely. *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[A] district court is not required to doublecheck the State's math [for timeliness purposes].").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Id.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

## ANALYSIS

The Petition asserts seven grounds for relief. *See generally* Petition at 4–10. Of these, the Respondent concedes that Grounds Six and Seven have been properly exhausted. *See* Response at 20–21 ("Thus, this claim is exhausted."). We'll accept this "express waiver of the exhaustion requirement," *McNair*, 416 F.3d at 1304, and review these two claims on the merits, *see Esslinger v. Davis*, 44 F.3d 1515, 1524 n.34 (11th Cir. 1995) ("The state's waiver of exhaustion is, in essence, a statement that the federal court's entertainment of the petitioner's unexhausted claim will not offend any state interest . . . and that, as a matter of justice, the claim should be heard and disposed of forthwith and on the

merits."). The first five claims, however, are a different matter. As to these, the Respondent says, DeJesus has failed to exhaust. *See generally* Response at 15–20. We'll address this preliminary question first.

### I.   The Unexhausted Claims

The Respondent asks us to dismiss Grounds One through Five as procedurally defaulted. *See id.* at 14–20. In responding to this argument, DeJesus says only this: "The Petitioner has satisfied the exhaustion requirement." Memorandum of Law [ECF No. 3] at 1. This mostly unresponsive and wholly conclusory assertion isn't nearly sufficient to preserve his objection—which is reason enough for us to dismiss each of these claims by default. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief."). Realistically, though, there isn't much DeJesus could've done to save these five claims because they're plainly unexhausted.

Grounds One and Two just reiterate the two arguments DeJesus made on direct appeal—that the trial court deprived him of due process when it (1) denied his lawyer's motion for a mistrial after the "State improperly bolstered witness testimony with proffered 'facts' not presented to the jury," and (2) "allowed the State to identify the victim through the testimony of his children." Petition at 4–5. And Grounds Four and Five simply re-assert the same ineffective-assistance claims DeJesus first presented in Amended Ground One and Amended Ground Two of his Amended Postconviction Motion. *Compare id.* at 7 ("Ineffective assistance of counsel for allowing the State to identify the victim through the testimony of both of his sons"), *and id.* at 8 ("Trial counsel was ineffective for failing to contemporaneously object to the improper comments made by the prosecutor in closing argument[s]"), *with* Amended Postconviction Motion [ECF No. 9-2] at 108 ("[T]rial counsel's failure to object to the State's identification of the decedent [through] two of his sons resulted in prejudicial testimony offered against the Petitioner"), *and id.* at 109 ("Defense counsel made the wrong objection

[during closing arguments] which was overruled[,] placing the inappropriate and prejudicial argument before the jury.").

But, before we discuss the procedural bar as it relates to these four claims, we'll pause to consider Ground Three on its own. In Ground Three, remember, DeJesus alleges that "[t]rial counsel was ineffective for waiving Petitioner's constitutional right to a speedy trial without Petitioner's consent and after Petitioner had requested defense counsel be removed due to a conflict of interest." Petition at 6. In its Response, the Respondent separates Ground Three into two subsidiary claims: the first pertaining to DeJesus's "claim of ineffective assistance for waiving speedy trial without Petitioner's consent" (what we'll refer to as "Ground Three (Subclaim One)"); the second stemming from the trial court's failure to address DeJesus's "request[ ] [that] his counsel be removed due to a conflict of interest" (what we'll call "Ground Three (Subclaim Two)"). Response at 18. We agree with the Respondent that Ground Three should be subdivided in this way—mainly because that claim *does* appear to highlight two distinct issues: one relating to the (supposed) ineffectiveness of counsel and the second flowing from the court's (alleged) error. *See* Petition at 6 ("[Counsel] informed the Court that Petitioner still did not want to waive speedy trial and that Petitioner no longer wanted him to be his attorney. Without holding a Nelson[4] hearing the Court stated: 'I'm not discharging [counsel] at this time.'"); *see also* Memorandum of Law [ECF No. 3] at 5–6 ("[Petitioner's] due process rights were violated because the trial court should have conducted a *Faretta* hearing.").

And, as with Grounds Six and Seven, the Respondent expressly concedes that Ground Three (Subclaim One) "is exhausted"—so we'll review its merits below. Response at 18. Ground Three

---

[4] A *Nelson* hearing is a proceeding Florida courts hold when a defendant wants to discharge his court-appointed lawyer. *See Nelson v. State*, 274 So. 2d 256, 258–59 (Fla. 4th DCA 1973), *approved by Hardwick v. State*, 521 So. 2d 1071, 1074–75 (Fla. 1988).

(Subclaim Two), by contrast, "is unexhausted" (the Respondent says) because DeJesus didn't raise this subclaim "on direct appeal or on postconviction." *Id.* We agree.

### A. Grounds One, Two, Three (Subclaim Two), Four, and Five are Unexhausted

We'll start with Grounds One and Two. As the Respondent correctly notes, these claims are unexhausted because DeJesus "argued only a violation of state law and discussed only Florida cases in his briefing. Petitioner did not cite to the United States Constitution or to any federal cases in his discussion of the issue." Response at 15, 17.[5] To properly exhaust his claim, a petitioner "must make the state court aware that the claims asserted present *federal* constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (emphasis added). While a petitioner needn't "cite book and verse on the federal constitution," he cannot "satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support the claim, or by making a somewhat

---

[5]     The Respondent also suggests that these claims are unexhausted for a second reason—because DeJesus "did not seek to have the Florida Supreme Court review the [Fourth DCA's] decision, although he could have." Response at 16–17. We find this second contention unpersuasive. To exhaust a claim in state court, a petitioner need only "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Powell v. Allen*, 602 F.3d 1263, 1269 (11th Cir. 2010). Because of the Florida Supreme Court's strictly circumscribed appellate jurisdiction, a criminal defendant "[does] not [for the most part] have the established right to seek review" in the Florida Supreme Court. *Tucker v. Dep't of Corr.*, 301 F.3d 1281, 1283–84 (11th Cir. 2002) (citing FLA. CONST. art. V, § 3(b)); *see also* FLA. R. APP. P. 9.030(a)(2) (outlining the few situations in which the Florida Supreme Court would exercise discretionary jurisdiction). Cognizant of this jurisdictional quirk, the Eleventh Circuit has long recognized that, "[i]n Florida, the decision of the district court of appeal is the final decision in the court of the normal appellate process." *Tucker*, 301 F.3d at 1286; *see also Barritt v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1246, 1249 n.3 (11th Cir. 2020) ("[C]laims for postconviction relief are exhausted once they are appealed to the [Florida] district court of appeal. They need not be appealed to the Florida Supreme Court in order to be considered exhausted for federal habeas purposes." (citing *Lee v. Wainwright*, 468 F.2d 809, 810 (5th Cir. 1972))).
        One additional point on this. The Respondent correctly concedes that DeJesus didn't need to assert Grounds One and Two *again* in his 3.850 motions. That's because, in Florida, claims of trial-court error can only be raised on direct appeal and, generally, may not be made in a postconviction motion. *See Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion.").

similar state-law claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351–52 (11th Cir. 2012) (cleaned up).

And, unfortunately for DeJesus, his state-court claims—the ones he now reiterates in Grounds One and Two—were devoid of *any* reference to federal law. Ground One, recall, first appeared in DeJesus's Initial Brief on direct appeal. But his argument in that brief was premised *exclusively* on the test the Florida Supreme Court has outlined for claims that a prosecutor improperly bolstered the credibility of a witness. *See* Initial Br. [ECF No. 9-2] at 33–34 ("The test of whether a witness has been improperly bolstered may be satisfied in two ways: (1) the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity; or (2) the prosecution may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony." (citing *Spann v. State*, 985 So. 2d 1059, 1067 (Fla. 2008))). Nowhere, however, on pages 33 and 34 of that brief—the pages in which Ground One appears—did DeJesus reference any federal law, case, or doctrine. *See id.*

Ground Two likewise showed up in that Initial Brief. *See id.* at 38 ("The trial court committed fundamental error when it allowed the State to identify the victim through the testimony of both of his children."). But, as with Ground One, DeJesus's position before the Fourth DCA (now recycled into Ground Two) relied *solely* on state law—specifically, over a century of state-law cases standing for the proposition that "relatives are proscribed from giving testimony to establish the family status of a victim where other means of identification are available." *Id.* (citing *Steinhorst v. State*, 412 So. 2d 332, 335 (Fla. 1982) ("[A] member of a victim's family may not testify for the purpose of identifying the deceased where a non-related witness is available for such purpose.")). Again, however, the Initial Brief included *no* citations to any federal cases, statutes, or doctrines on this issue. *See id.* at 33–41.

Grounds One and Two, in short, are unexhausted because DeJesus failed to alert the Fourth DCA "to the presence of a federal claim." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Preston v. Sec'y,*

*Fla. Dep't of Corr.*, 785 F.3d 449, 458–59 (11th Cir. 2015) ("[The petitioner] did not cite a single federal case, and relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law. He never mentioned the federal Due Process Clause, or, indeed, any other federal constitutional provision."); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) ("Pearson cited exclusively to state cases, and all of his substantive arguments addressed Florida law. None of the cases he cited were decided on federal grounds and he did not otherwise indicate that he intended to raise federal claims.").

Grounds Four and Five—though similarly unexhausted—are a bit more complicated. As the Respondent concedes, DeJesus *did* raise those two grounds "[i]n his amended motion for postconviction relief," Response at 18–20, and he *did* base these arguments on federal law—*viz.*, the Sixth Amendment's guarantee of effective representation, *see* Amended Postconviction Motion [ECF No. 9-2] at 105 ("Trial counsel was ineffective for allowing the state to identify the victim through the testimony of both his children."); *id.* at 109 ("Trial counsel was ineffective for failing to properly object to improper comments made by the prosecutor in closing argument."). Still, as the Respondent points out, DeJesus "filed an initial brief in his postconviction appeal and did *not* allege that the postconviction court erred in denying [these] claim[s]." Response at 19–20; *see also* Second Initial Br. [ECF No. 9-2] at 253–54 (making only three arguments on appeal—none of which touched *either* on counsel's failure to object to the identification *or* on counsel's failure to object to the prosecutor's closing). These claims are thus unexhausted.

Recall that, to exhaust a claim in state court, a federal habeas petitioner must "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up).

Where, as here, a claim is properly raised for the first time[6] on collateral review, "exhaustion usually requires not only the filing of a FLA. R. CRIM. P. 3.850 motion, but *an appeal from its denial.*" *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (emphasis added) (quoting *Leonard v. Wainwright*, 601 F.3d 807, 808 (11th Cir. 1979)). Because DeJesus failed to raise the *postconviction court's* denial of these claims in his postconviction appeal, he's failed to exhaust both Grounds Four and Five. *See, e.g., Brown v. Dixon*, 2022 WL 1197657, at *7 (S.D. Fla. Mar. 15, 2022) (Altman, J.) ("Brown challenges the *postconviction* trial court's decision to incorporate the State's Rule 3.850 Response as its own. Again, then, Brown had to advance this as a *federal* claim in his postconviction appeal. But he failed to do that. And since his postconviction appeal came to a close in 2018, it's now way too late to fix this problem." (cleaned up)).

Finally, we agree with the Respondent that Ground Three (Subclaim Two) is unexhausted. Indeed, unlike the other four claims we've addressed here, DeJesus has *never* argued—as he does in this claim—that the trial court erred by denying his request for "defense counsel [to] be removed due to a conflict of interest[.]" Petition at 6; *see also generally* Initial Br. [ECF No. 9-2] at 25–41 (never advancing this claim); Amended Postconviction Motion [ECF No. 9-2] at 103–18 (same); Second Initial Br. [ECF No. 9-2] at 252–87 (same). Ground Three (Subclaim Two), therefore, "has not [been] fairly presented . . . to the state's highest court, either on direct appeal or on collateral review." *Pope*, 680 F.3d at 1284.[7]

---

[6] "Florida requires that ineffective assistance claims generally be raised on collateral review pursuant to Florida Rule of Criminal Procedure 3.850." *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016) (citing *Smith v. State*, 998 So. 2d 516, 522 (Fla. 2008)).

[7] In his Reply—but not before—DeJesus tries to resuscitate this Ground by suggesting that he "fairly raised Feretta [sic] claim which reflects the conflict in previous Motions." DeJesus's Reply to Respondent's Response (the "Reply") [ECF No. 10] at 1. Specifically, he says that, in his *pro se* Postconviction Motion, he blamed the trial court for failing to hold a hearing under *Faretta v. California*, 422 U.S. 806 (1975), when it became clear that he and his lawyer disagreed about the decision to waive his speedy-trial rights. *See* Postconviction Motion [ECF No. 9-2] at 87 ("[T]he trial court could have and should have took a totally different approach by at the very least informing [DeJesus] that he

When a petition "contains both exhausted and nonexhausted claims, it is a classic 'mixed petition.'" *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1351 (11th Cir. 2004). When a petitioner presents a "mixed petition" on habeas review, "the district court ordinarily must either dismiss the petition, or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim[s]." *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (cleaned up). But the district court needn't dismiss or stay the case "when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred." *Kelley*, 377 F.3d at 1351. Simply put, we may deny the unexhausted claims in a mixed petition when "it would serve no purpose to dismiss the petition for further exhaustion because review of those claims is unavailable in state courts." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).

And that's precisely the situation we have here: DeJesus, as we're about to see, can no longer exhaust these claims in state court. Starting with Grounds One, Two, and Three (Subclaim Two), these are claims of trial-court error that, under Florida law, can only be raised on direct appeal. *See Bruno*, 807 So. 2d at 63 ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion."). Since DeJesus's direct appeals were resolved on July 9, 2013, *see* Direct Appeal Mandate [ECF No. 9-2] at 81, these claims are now procedurally defaulted, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the Petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar habeas relief."); *see also Brown*,

---

could represent himself if he [insisted] on dismissing his attorney."). We won't consider arguments a party makes for the first time in reply. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not fully presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). In any event, Ground Three (Subclaim Two) remains unexhausted because—whatever he might have said in his Postconviction Motion—DeJesus indisputably failed to present this issue in the *appeal* he took to the Fourth DCA. *See* Second Initial Br. [ECF No. 9-2] at 269–72. And it was his burden to do so. *See Pope*, 680 F.3d at 1284 ("A failure to exhaust occurs, in turn, when a petition has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.").

16

2022 WL 1197657, at *7 ("Since Brown failed to present Ground One as a federal claim on direct appeal—and given that his direct appeal came to an end way back in 2003—he has no means of exhausting this claim now." (cleaned up)).

Grounds Four and Five, by contrast, are ineffective-assistance claims that, typically, can only be raised in a state collateral attack under Rule 3.850. *See Owens v. State*, 920 So. 2d 59, 61 (Fla. 4th DCA 2005) ("Ordinarily, claims of ineffective assistance are not reviewable on direct appeal."). But these claims are likewise defaulted because Florida law would bar DeJesus from bringing a *new* Rule 3.850 motion in state court. Here's why. DeJesus's conviction and sentence became final on July 9, 2013—when the Fourth DCA issued its mandate affirming DeJesus's conviction. *See* Direct Appeal Mandate [ECF No. 9-2] at 81 (entered on July 9, 2013); *see also Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal."). Under Florida law, DeJesus then had "[two] years after the judgment and sentence bec[a]me final"—*i.e.*, until July 9, 2015—to file a Rule 3.850 motion that asserted these *federal* claims. FLA. R. CRIM. P. 3.850(b); *see also Rosado v. State*, 654 So. 2d 623, 624 (Fla. 5th DCA 1995) ("The law in Florida is that a 3.850 motion filed within two years of the issuance of a mandate is timely filed.").

There are (it's true) three exceptions to this timeliness bar. These exceptions apply when a state habeas petitioner can show that (1) "the facts on which the claim is predicated were unknown to the movant," (2) a "fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively," or (3) "retained . . . counsel, through neglect, failed to file the motion." FLA. R. CRIM. P. 3.850(b)(1)–(3). But DeJesus never even tries to suggest that any of these three exceptions save his claims here. Since DeJesus thus cannot return to state court on these two claims, they are—as the Respondent points out—procedurally defaulted. *See Greenwood v. Sec'y, Fla. Dep't of Corr.*, 794 F. App'x 831, 834 (11th Cir. 2019) ("It is clear that

Greenwood's unexhausted claim would be procedurally barred in state court because he has not alleged newly discovered evidence or a new constitutional right," and "second or successive Rule 3.850 petitions are not permitted absent allegations of newly discovered evidence or a new constitutional right" (cleaned up)).[8]

## B.  Neither Exception to Procedural Default Applies

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."); *see also Tharpe v. Warden*, 898 F.3d 1342, 1346 (11th Cir. 2018) ("A federal court cannot review a procedurally defaulted claim unless the petitioner can show cause for the failure to properly present the claim and actual prejudice." (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977))). Neither exception helps DeJesus here.

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural

---

[8] One last thing: For Grounds Four and Five, DeJesus *could've* relied on the equitable exception the Supreme Court recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court allowed courts to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim if the "claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. To make such a "substantial" showing, though, a petitioner must prove that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1270 (11th Cir. 2014) (cleaned up). But DeJesus doesn't invoke this exception, *see generally* Petition; Reply—which is reason enough to disregard *Martinez* here, *see United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances.").

rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up). "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (cleaned up). "[A]llegations [supporting cause and prejudice] must be factual and specific, not conclusory." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011).

DeJesus doesn't even try to excuse his failure to exhaust Grounds One, Two, Three (Subclaim Two), Four, and Five by pointing to some "external cause," *see generally* Petition; Reply—which is reason enough to stop here, *see Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) ("Wright provides the court with no explanation or evidence to establish cause and prejudice. Accordingly, the remaining claims of ineffective assistance of counsel are barred from federal habeas review."); *Griffin v. McNeil*, 667 F. Supp. 2d 1340, 1360 (S.D. Fla. 2009) (Moore, J.) ("This claim is unexhausted because Griffin had the opportunity to raise this claim on direct appeal or in his post-conviction proceeding but did not, and he has made no attempt to demonstrate cause or prejudice."); *see also Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances.").

The actual-innocence doctrine is likewise inapplicable. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). DeJesus doesn't argue that he's actually innocent of the charges against him. *See generally* Petition; Reply. Nor does he point to any "new evidence" that might

support a contention that he is. *See generally* Petition; Reply. That's pretty much the end of that. *See Brown*, 2022 WL 1197657, at *9 ("Brown fails to argue that he's actually innocent. Nor does he point to any 'new evidence' that might support a contention that he is. This exception is thus likewise inapplicable here." (cleaned up)).

***

We thus **DISMISS** Grounds One, Two, Three (Subclaim Two), Four, and Five as procedurally barred.

## II. The Remaining Grounds Fail on the Merits

### A. General Principles

All three remaining claims—Grounds Three (Subclaim One), Six, and Seven—allege that DeJesus's trial counsel was, for one reason or another, constitutionally ineffective. The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed

deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, however, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

We'll take each of the remaining claims in turn.

## B. Ground Three (Subclaim One)

In Ground Three (Subclaim One), DeJesus avers that his trial lawyer was ineffective "for waiving Petitioner's constitutional right to a speedy trial without Petitioner's consent." Petition at 6. DeJesus also claims that he "made it clear that he would not waive his speedy trial rights," and that, when counsel couldn't get him to change his mind, "[counsel] forged Petitioner's signature on the waiver of speedy trial document." *Id.* The Respondent counters that "[t]he postconviction court properly found defense counsel's waiver of speedy trial to be a reasonable strategic decision." Response at 38–39.

As we've said, DeJesus appealed this claim to the Fourth DCA after the postconviction trial court denied his Amended Postconviction Motion. *See* Second Initial Br. [ECF No. 9-2] at 269 ("The Court erred in summarily denying the claim of ineffectiveness in waiving speedy trial as [a] reasonable trial strategy without conducting an evidentiary hearing to determine whether the waiver was reasonable over [DeJesus's] express objections"). Since the substance of Ground Three (Subclaim One) was "adjudicated on the merits in State court proceedings," we must apply the heightened

standard of review set out in § 2254(d). *See Harrington*, 562 U.S. at 100 ("Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision was contrary to [clearly established] federal law . . . or that it involved an unreasonable application of such law; or that it was based on an unreasonable determination of the facts in light of the record before the state court." (cleaned up)). And, while the Fourth DCA affirmed the lower court in an unwritten opinion, *see DeJesus*, 287 So. 3d at 575, we presume that the appellate court adopted the reasoning the state postconviction court laid out in its lengthy and detailed written order, *see Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In its order denying what's now Ground Three (Subclaim One), the state postconviction trial court made two key findings. *First*, it looked to Florida law and concluded that "an attorney may waive speedy trial without consulting the client and even against the client's wishes." Order Granting in Part and Denying in Part Amended Postconviction Motion [ECF No. 9-2] at 147 (quoting *McKenzie v. State*, 153 So. 3d 867, 875 (Fla. 2014)). *Second*, it relied on a transcript from a hearing that took place on November 13, 2008, where DeJesus's counsel represented that "there was 'no way' that he would be prepared for trial before the speedy trial deadline [on February 1, 2009]." *Id.* at 148 (quoting November 13, 2008 Hr'g Tr. [ECF No. 9-9] at 8). Given this representation—and the additional trial preparation counsel had to undertake—the court agreed that "counsel's waiver [was] a reasonable strategic decision." *Id.*

These findings were well within the trial court's discretion to make. While the Sixth Amendment provides "a broad constitutional right" to a speedy trial, Florida law adds a more specific procedural guarantee: "a person charged with a felony" in Florida should "be brought to trial within 175 days of being taken into custody." *Dillard v. Sec'y, DOC*, 440 F. App'x 817, 819 (11th Cir. 2011)

(citing FLA. R. CRIM. P. 3.191). Of course, these interlocking rights can be waived, and DeJesus is simply wrong to suggest that trial counsel needed "[his] consent" for that waiver. Petition at 6. To the contrary, the law is pellucid that a criminal defense lawyer has the authority to waive his client's right to a speedy trial *without* his client's permission. *See, e.g.*, *Fayson v. Sec'y, Fla. Dep't of Corr.*, 568 F. App'x 771, 773 (11th Cir. 2014) ("An attorney, *acting without consent from his client*, may waive his client's right to a speedy trial." (emphasis added)); *Wells v. McNeil*, 2009 WL 2767659, at *11 (S.D. Fla. Aug. 25, 2009) (Moreno, J.) ("[I]n Florida, a defense attorney may waive speedy trial on his client's behalf without consulting him, without his presence, and even against his wishes. Such a waiver is binding on the client." (citing *State v. Abrams*, 350 So. 2d 1104, 1105 (Fla. 4th DCA 1977))). In short, the only issue here is whether the state postconviction court reasonably applied *Strickland* when it found that "counsel's waiver [was] a reasonable strategic decision." Order Granting in Part and Denying in Part Amended Postconviction Motion [ECF No. 9-2] at 148.

Under *Strickland*, a waiver of speedy trial doesn't constitute deficient performance when "counsel was actively pursuing a defense and preparing for trial, by deposing witnesses, and conducting [an] investigation." *Wells*, 2009 WL 2767659, at *12; *see also Bannister v. Inch*, 2021 WL 2567512, at *5 (S.D. Fla. June 23, 2021) (Altman, J.) (finding that counsel's waiver of his client's speedy-trial right wasn't deficient because "[c]ounsel cannot be blamed for doing what any reasonable lawyer would have done: taking his time to review all the evidence, explore all settlement options, and depose all the State's witnesses"). During the November 13, 2008 hearing, defense counsel specifically said: "[W]e have depositions set for December 4[, 2008]. We have five witnesses." November 13, 2008 Hr'g Tr. at 4. Indeed, the prosecutor, defense counsel, and the trial judge all agreed that the results of a critical DNA test wouldn't have been ready before the speedy-trial period expired. *See id.* at 8 ("You won't get your DNA back in time."). And, as the state court explained in its order, trial counsel *admitted* that "there's no way we're going to be prepared for trial" without a speedy-trial waiver. *Id.* Given all

this, we think counsel might well have been *ineffective* if he *had not waived* DeJesus's speedy-trial rights. *See Fernandez v. Sec'y, Dep't of Corr.*, 2019 WL 3958269, at *6 (M.D. Fla. Aug 22, 2019) ("[C]ounsel would not have been effective if she went to trial without taking the depositions. In light of these circumstances, Attorney Tucker made a reasonable strategic decision to move for a continuance and waive speedy trial." (cleaned up)). Because the state postconviction court reasonably applied *Strickland* when it found that counsel had properly waived DeJesus's speedy-trial rights, Ground Three (Subclaim One) is **DENIED** on the merits.

### C.  Ground Six

In Ground Six, DeJesus asserts that "trial counsel was ineffective for failing to contemporaneously object to testimony which was both irrelevant and prejudicial." Petition at 9. Specifically, DeJesus takes issue with a portion of Officer Joseph Durso's testimony in which the officer claimed that "[DeJesus] was struggling, he was pulling away from us. He was cursing at us, telling us, fuck you. Calling us a bunch of crackers, that sort of thing." *Id.* (quoting Trial Tr. [ECF No. 9-5] at 884). DeJesus also alleges that the error was compounded when, during closings, the prosecutor referred back to Officer Durso's testimony and argued that DeJesus was resisting arrest *because* he was guilty. *See id.*; *see also* Trial Tr. [ECF No. 9-5] at 1019 ("[DeJesus] fought with the police. He's screaming, F you, crackers. He's cursing at the police. Why? Because he's not going into custody. He would not cooperate. . . . He knew that they got him for murder."). In the Respondent's view, the state postconviction court correctly found that "such use [of the slur] was harmless error and thus trial counsel's failure to object to such use could not be considered prejudicial under *Strickland*." Response at 44–45. We agree.[9]

---

[9] The state postconviction court also rejected DeJesus's separate claim that "counsel's failure to object to the entirety of the irrelevant and prejudicial testimony and [the] State's comment on [the Petitioner's] resistance to arrest prejudiced [the Petitioner] such that he was deprived a fair trial." Order Granting in Part and Denying in Part Amended Postconviction Motion [ECF No. 9-2] at 152

Again, DeJesus presented this same argument to the Fourth DCA when he appealed the trial court's denial of his Amended Postconviction Motion. *See* Second Initial Br. [ECF No. 9-2] at 280 ("[T]he trial court erred in summarily denying the claim which alleged ineffective assistance for failing to object to testimony of a racial slur uttered by [DeJesus] when he was arrested."). Moreover, because the state postconviction court disposed of this claim in a written order, we "look through" the Fourth DCA's unwritten opinion and "assume that the final state court adopted the lower court's reasoning." *Wilson v. Sec'y, Fla. Dep't of Corr.*, 769 F. App'x 825, 827 (11th Cir. 2019) (citing *Wilson*, 138 S. Ct. at 1192). And, since the state courts considered and rejected this claim, we apply the heightened standard of review set out in § 2254(d).

According to the state postconviction court, "the record reflects that Defendant's use of the slur was referenced once by the prosecutor during the State's closing arguments. Further, [the] use of the slur appears to have been used to emphasize Defendant's resistance to his arrest. Thus, the court finds that such use was harmless error and therefore counsel's failure to object to such use could not be considered prejudicial under *Strickland*." Order Granting in Part and Denying in Part Amended Postconviction Motion [ECF No. 9-2] at 151–52. In saying so, the court discussed two earlier Fourth DCA decisions: *Rich v. State*, 18 So. 3d 1227 (Fla. 4th DCA 2009), and *Guerrero v. State*, 125 So. 3d 811 (Fla. 4th DCA 2013). In *Rich*, the Fourth DCA found that the use of the word "cracker" during testimony—and the State's subsequent reference to that word in closings—was harmless error,

---

(errors in original). The state court found this aspect of the testimony and closing argument appropriate because Florida law allows for "evidence of flight, concealment, or resistance to lawful arrest after the fact of a crime[.]" *Id.* (quoting *Twilegar v. State*, 42 So. 3d 177, 196 (Fla. 2010)). And this makes sense because, as the Florida Supreme Court has noted, this evidence is "relevant to consciousness of guilt which may be inferred from such circumstances." *Twilegar*, 42 So. 3d at 196. We needn't address this specific finding here, however, because DeJesus never mentioned it *either* in his appeal from the trial court's denial of his Rule 3.850 motion *or* in his federal habeas petition. *See* Petition at 9; Second Initial Br. [ECF No. 9-2] at 280–86; *see also Pope*, 680 F.3d at 1284 ("A failure to exhaust occurs, in turn, when a petition has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.").

reasoning that "we do not find the state was attempting to inject race as an issue in the trial or impermissibly appea[l] to bias and prejudice." *Rich*, 18 So. 3d at 1231. The facts in *Guerrero* were very different: The prosecutor there used the "n" word "twenty-three times during the trial, not counting all the times witnesses testified to various references," and the frequency of the slur's use made it apparent "that the state was purposely injecting racial prejudice into the case." 125 So. 3d at 816. In relying on *Rich* over *Guerrero*, the state court in our case explained that "[the] use of the slur was referenced once by Officer Durso in his testimony and once by the prosecutor during the State's closing arguments" and noted that "[the] use of the slur appears to have been used to emphasize Defendant's resistance to his arrest." Order Granting in Part and Denying in Part Amended Postconviction Motion [ECF No. 9-2] at 151–52.

The state postconviction court's denial of this claim wasn't contrary to *Strickland*—nor was it based on an unreasonable determination of the facts. "The Constitution prohibits racially biased prosecutorial arguments." *McCleskey v. Kemp*, 481 U.S. 279, 309 n.30 (1987) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). While the Florida Supreme Court has "caution[ed] prosecutors against eliciting testimony involving racial slurs unless absolutely necessary," it has also recognized that racial slurs can be deployed at trial when their use does not "attempt to inject race as an issue in the trial, or [constitute] an impermissible appeal to bias and prejudice." *Jones v. State*, 748 So. 2d 1012, 1023 (Fla. 1999); *see also Rich*, 18 So. 3d at 1230–31 ("[W]e do not find the state was attempting to inject race as an issue in the trial or impermissibly appealing to bias and prejudice."); *Aquino v. Sec'y, Dep't of Corr.*, 2019 WL 11542248, at *13 (M.D. Fla. Feb. 25, 2019) ("[T]he prosecutor in Petitioner's case neither stated nor implied that Petitioner uttered a racial slur or that the shooting of [the victim] was racially motivated. . . . These limited comments did not paint Petitioner as a racist and did not vitiate the entire trial.").

Having reviewed the record, we agree with the state court that the slur was *not* used to cast DeJesus as a racist or to inject race into the jury's deliberations. As the state court noted, the word "cracker" was used only twice—once during the officer's testimony and once in closing—and was deployed for the very limited (and proper) purpose of showing DeJesus's consciousness of guilt: *i.e.*, that he was resisting arrest because he knew that he was guilty of murder. *See* Trial Tr. [ECF No. 9-5] at 884 ("[DeJesus] *was struggling, he was pulling away from us*. He was cursing at us, telling us, fuck you. Calling us a bunch of crackers, that sort of thing." (emphasis added)); *id.* at 1019 ("[DeJesus] *fought with the police. He's screaming*, F you, crackers. He's cursing at the police. *Why? Because he's not going into custody. He would not cooperate. . . . He knew that they got him for murder*." (emphasis added)). The state court reasonably applied *Strickland* when it determined that counsel was not ineffective in failing to object to this limited use of the word "cracker" during trial. *See Junes v. Fla. Dep't of Corr.*, 2018 WL 11149762, at *22 (S.D. Fla. Feb. 26, 2018) (White, Mag. J.) ("Here, there is a reasonable argument that [counsel] did not deficiently fail to object to the prosecutor's repetition of the N-word. The trial record reflects that the prosecutor did not use the N-word in an inflammatory way."), *report and recommendation adopted*, 2018 WL 11149756 (S.D. Fla. May 16, 2018) (Cooke, J.), *aff'd* 778 F. App'x 639 (11th Cir. 2019); *cf. United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("[C]ounsel is not ineffective for failing to raise claims reasonably considered to be without merit." (cleaned up)); *German v. Inch*, 2020 WL 5087046, at *21 (S.D. Fla. Aug. 28, 2020) (Altman, J.) ("As with so many of German's claims, however, his counsel cannot be faulted for failing to advance meritless objections.").

We thus **DENY** Ground Six on the merits.

### D. Ground Seven

In Ground Seven, DeJesus blames his trial counsel for failing to call a witness who (he says) would have supported an alibi defense. Specifically, DeJesus claims that "[t]rial counsel was informed prior to trial that Petitioner was at his girlfriends [sic] Anna Cortes house [sic] at the time of the

murder," and that counsel's failure to call Ms. Cortes deprived him of crucial exculpatory evidence. Petition at 10.[10] As the Respondent notes, however, the state court fully explored this issue at an evidentiary hearing and reasonably determined: "[T]rial counsel concluded that such a defense was not viable and that [not pursuing an alibi defense] was a reasonable trial decision." Response at 49–50.

The decision to call (or not to call) specific witnesses "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). Still, counsel can be ineffective for failing to call an alibi witness if the petitioner shows that the decision wasn't a strategic one at all. *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 563–64 (11th Cir. 2009) ("If counsel made the decision not to call Washington for strategic reasons . . . then this court would not provide relief for such strategic decisions by counsel."). Even if the petitioner makes this showing, though, he must also demonstrate some "reasonable probability that the alibi testimony would have changed the outcome of [his] trial." *Wellington v. Moore*, 314 F.3d 1256, 1263 (11th Cir. 2002); *see also Walker v. Sec'y, Fla. Dep't of Corr.*, 495 F. App'x 13, 17 (11th Cir. 2012) ("Walker failed to show that counsel's decision not to call his brother as [an alibi] witness was unreasonable or that the result of his trial would have been different if his brother had testified.").

---

[10] In state court, DeJesus also blamed his trial counsel for not calling his mother (Sinatra Liles) as an alibi witness. *See* Amended Postconviction Motion [ECF No. 9-2] at 116 ("Ms. Liles['s] testimony puts the Petitioner at a different location at the time of the shooting. Given the lack of credibility of the State's witnesses, the failure of counsel to call Ms. Liles certainly affected the outcome of the trial."). And he re-raised this issue when he appealed the denial of his postconviction motion. *See* Second Initial Br. [ECF No. 9-2] at 276–77 ("The court erred in accepting the state's argument that the inconsistency between *Ms. Liles* and Ms. [Cortes]'s testimony made the alibi unavailing." (emphasis added)). But, for whatever reason, he elected *not* to include this claim—relating to Ms. Liles—in this Petition. *See* Petition at 10 ("Trial counsel was ineffective for failing to call *Anna [Cortes]* to testify as an alibi witness in support of Petitioner's defense." (emphasis added)). We thus will not address Ms. Liles here. *See Chavez*, 647 F.3d at 1061 ("[D]istrict courts [are not] required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.").

As we've said, the state postconviction court held an evidentiary hearing on this issue. *See* Order Granting Evidentiary Hr'g [ECF No. 9-2] at 233 ("The Court finds that [DeJesus] has stated a sufficient claim of ineffective assistance of counsel . . . and further finds that there is nothing in the record to conclusively refute such allegations."). During the evidentiary hearing—which spanned three days—the state postconviction court heard from five witnesses: DeJesus, Liles, Cortes, and DeJesus's two trial attorneys, Albert "Bert" Winkler and Joseph Walsh. *See* Order Denying Amended Ground Four [ECF No. 9-2] at 236. At the end of those hearings, the court issued a written order denying the claim, finding that DeJesus "failed to meet both prongs of the *Strickland* test." *Id.* at 238. Starting with the first prong (deficient performance), the court concluded—after listening to the witnesses—that, "in [counsel's] opinion, [DeJesus] did not have a viable alibi defense," and that, after explaining the alibi defense's defects, DeJesus "made an informed decision and expressly stated that he did not wish to present an alibi defense." *Id.* at 244. As to the second prong (prejudice), the court determined that DeJesus "failed to show a reasonable probability the outcome of the trial would have been different if an alibi defense had been presented." *Id.* at 247–48. The Fourth DCA affirmed this decision in an unwritten opinion that, we presume, adopted the state postconviction court's reasoning. *See DeJesus*, 287 S. 3d at 575; *cf. Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). And, since the postconviction court made several factual findings after an evidentiary hearing, § 2254 mandates that we "presume the state court's factual findings to be correct" unless DeJesus can "[rebut] the presumption of correctness by clear and convincing evidence." *Ward*, 592 F.3d at 1177 (citing 28 U.S.C. § 2254(e)(1)).

DeJesus has failed to meet this heavy burden. To understand why, let's go through the evidence the state court considered. The evidentiary hearings began with DeJesus, who testified that

he was living with his mother, Sinatra Liles, at the time of his arrest. Day 1 Evidentiary Hr'g Tr. ("Day 1 Hr'g Tr.") [ECF No. 9-6] at 5. He claimed that he told his first lawyer (Marc Shiner): "I was with Anna [Cortes]" on the night of the shooting. *Id.* at 6–9. He also insisted that he told Mr. Winkler and Mr. Walsh (his trial lawyers) that he was with Ms. Cortes that night. *See id.* at 10 ("Q: So you informed [counsel] about that night, the fact that you were with [Anna Cortes] that evening? A: Yes, ma'am, and Joseph Walsh as well."). Although he admitted that his lawyers seemed reluctant to present an alibi defense, he averred that they never explained to him why the defense wouldn't work. *See id.* at 21–22 ("Q: Did [counsel] come to the jail and tell you why they felt this was a not a good defense? A: No, ma'am. Q: Did [counsel] tell you why he felt that your mother [or Anna Cortes] would not make good witnesses? A: No, ma'am."). As a result, DeJesus was "surprise[d]" when his lawyers didn't call Ms. Cortes at trial. *Id.* at 35–36.

The next two witnesses were Mmes. Liles and Cortes. Ms. Liles's testimony was very limited. She agreed with postconviction counsel that "[she] had seen [DeJesus] that evening at 10:30 [PM]," which was the approximate time of the shooting. *Id.* at 76. On cross-examination, she added that, after her son returned home at approximately 10:30 PM, he stayed for about fifteen minutes before going back to Ms. Cortes's. *See id.* at 82 ("Q: [Y]our son stayed at your home for about fifteen minutes, true? A: Correct. Q: And then after that, he returned to Ms. Cortes'[s] house, true? A: Correct.").

Ms. Cortes—who testified next—lived across the street from DeJesus and his mom. *See* Day 2 Evidentiary Hr'g Tr. ("Day 2 Hr'g Tr.") [ECF No. 9-7] at 6. She testified that—on the day of the shooting—she, her mother, and her young son went to a Walmart that was "[m]aybe five minutes" from her home to "[buy] some groceries for the house." *Id.* at 10. According to Ms. Cortes, she left the Walmart at 9:58 PM and, when she got home, found DeJesus smoking a cigarette on her front porch. *See id.* at 10–11 ("A: [H]e doesn't smoke in my house. He smokes cigarettes on the front porch. Q: Is that where he was when you got home? A: Yes."). Ms. Cortes then recounted how, later that

night, DeJesus went back to his mother's house to eat. *See id.* at 11–12 ("Q: At any point did you see [DeJesus] leave? A: [He] left to go eat food because I didn't have a microwave at the time."). Ms. Cortes confirmed that, after his dinner, DeJesus came back to her place and spent the night. *See id.* at 13 ("Q: Was [DeJesus] there the rest of the evening? A: He was there, yes.").

DeJesus's trial attorneys—Messrs. Walsh and Winkler—testified last. Mr. Walsh explained why he didn't believe that Ms. Cortes would be a viable alibi witness. As he noted: "Mr. DeJesus was out of [Ms. Cortes's] presence for ten to fifteen minutes, which obviously would have caused a problem considering how close the shooting scene was to where Ms. Cortes and Ms. Liles lived." *Id.* at 58. He also determined that "Ms. Cortes's statements were inconsistent throughout and I think some of what she said was inconsistent with what Ms. Liles said." *Id.* at 59. Mr. Walsh thus concluded: "We were obviously dealing with a case where we were going to have a lot of impeachment against the witnesses that would have been called, and putting Mr. DeJesus in an area that was close to the scene would have been, I think, very risky." *Id.* at 62–63. And, he added, DeJesus agreed *not* to pursue an alibi defense at trial. *See id.* at 65–66 ("[W]e went into trial with a joint understanding, and when I say that I mean all of us, Mr. DeJesus, Mr. Winkler and I, that that was not the strategy we were going to use.").

Mr. Winkler echoed Mr. Walsh's concerns and pointed out that Ms. Cortes's story had "inconsistencies in three different versions of what she said at various times to various people, which obviously gives concern in terms of someone presenting themselves as a credible believable witness." *Id.* at 102. The biggest problems with Ms. Cortes's testimony, Mr. Winkler said, were that "she put [DeJesus] very close to the scene of the homicide," and that "she is his girlfriend." *Id.* at 102–03.

For two reasons, we think the state court reasonably applied *Strickland* in denying this claim. *First*, we agree with the state court that counsel's performance wasn't deficient. Counsel is rarely ineffective when, after investigating a potential alibi defense, he elects not to pursue it. *See Rizo v.*

*United States*, 662 F. App'x 901, 914 (11th Cir. 2016) ("[I]t was not unreasonable for [counsel] to conclude pursuit of a potential alibi defense would likely be fruitless[.]"); *Lucas v. Fla. Dep't of Corr.*, 842 F. App'x 357, 362 (11th Cir. 2021) ("[T]he State could have attacked Catoggio's credibility based on her friendship and sexual relationship with Lucas as well as internal inconsistencies with her deposition testimony. . . . Given these facts, the strategic decisions of Lucas's trial counsels not to investigate Catoggio further or call her as a witness to present an alibi defense was well within the counsels' reasonable profession judgment.").[11]

And that's especially true in a case like ours, where the proposed alibi defense would've been pure folly. The state court identified ten reasons for its view that the alibi defense would have failed: (1) "the murder scene was in close proximity to the homes of [Ms. Liles] and [Ms. Cortes]"; (2) "the distance between the scene of the murder and [Ms. Cortes's] residence was only approximately two blocks"; (3) "[DeJesus] was riding a bicycle on the night in question and had means to travel quickly between the crime scene and the residences of his mother and girlfriend"; (4) "the alibi would have placed [DeJesus] squarely at the murder scene"; (5) "neither [Ms. Liles nor Ms. Cortes] were able to be precise about [DeJesus's] exact location at the time of the murder"; (6) Ms. Liles's statements "placed [DeJesus] outside of her residence and presence during the time of the murder"; (7) Ms. Cortes made statements "which placed [DeJesus] outside of her residence and presence at the time of the murder"; (8) the alibi witnesses "were not impartial nor unbiased"; (9) "the alibi defense in this case

---

[11] The Eleventh Circuit (it's true) recognizes a general exception to this rule: When an alibi is the defendant's *only* viable defense, counsel *can* be ineffective for not pursuing it. *See Code v. Montgomery*, 799 F.2d 1481, 1483 (11th Cir. 1986) ("Here there was only one strategy: an alibi defense. By not inquiring as to Code's whereabouts on the day of the robbery, [counsel's] investigation was inadequate."). But this exception is plainly inapplicable here because DeJesus could—and did—rely on a misidentification defense at trial. *See* Day 2 Hr'g Tr. at 70–71 ("[Q:] So [Mr. Walsh,] you are trying to say that [the witnesses] either misidentified [the Petitioner] or didn't see it? A: Right."); *see also Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 924–25 (11th Cir. 2017) ("[C]ontrary to Martinez's suggestion, the alibi defense was not his 'only possible defense,' so [counsel] did not have an obligation to pursue it until it bore fruit or until all hope withered." (cleaned up)).

was weak as it did not place [DeJesus] with a specific person at a specific time"; and (10) "Liles' testimony and [Cortes's] testimony were inconsistent with each other." Order Denying Amended Ground Four [ECF No. 9-2] at 242–43.

And, having conducted our own review of the evidentiary hearing, we find the state court's decision eminently reasonable. Had defense counsel called Ms. Cortes at trial, after all, she would have placed DeJesus just a few blocks from the scene of the shooting in the minutes after the shooting occurred. *See* Day 2 Hr'g Tr. at 58 ("[T]here were times that Mr. DeJesus was out of [Ms. Cortes's] presence for ten to fifteen minutes, which obviously would have caused a problem considering how close the shooting scene was."); *id.* at 102 ("[Ms. Cortes] put[s] [DeJesus] just five minutes after the homicide, or ten minutes at the most, two to two and a half blocks from the scene of the homicide."). Messrs. Walsh and Winkler were also concerned that Ms. Cortes's proposed testimony contradicted earlier statements she had given. *See* Day 2 Hr'g Tr. at 59 ("You know, Ms. Cortes's statements were inconsistent throughout."); *id.* at 103 ("[Y]ou tend to sink or swim with that alibi defense. If [the witness] is not believed, it appears the defendant is usually found guilty, regardless of how many holes you can punch in the State's case.").

And they had ample reason for this concern. So, for instance, Ms. Cortes had originally said that "[DeJesus] was there when she got home *with a friend* drinking beer," which contradicted her later statement that she found him there alone. *See* Day 2 Hr'g Tr. at 101 (emphasis added). Ms. Cortes was also inconsistent about the timing of DeJesus's dinner at his mother's—including on the crucial questions of *when* he went there and *how long* he stayed: As an example, she told the original investigator that "DeJesus and his friend went to the mother's house across the street and they were gone about fifteen minutes," but she told Mr. Winkler that "[DeJesus] went to his mother's an hour or more later," and (what's worse) she claimed in her deposition that "[DeJesus] went back and forth to his mother's house." *See id.* at 101–02. There was also a point in Ms. Cortes's deposition where she

admitted that "I really can't say because I go [sic] to bed," and "I don't remember much that I did." *Id.* at 102. All of which to say that trial counsel had legitimate concerns about the viability of Ms. Cortes's testimony.

And, for what it's worth, DeJesus gives us nothing to allay these concerns—much less does he give us the kinds of "clear and convincing" evidence that he would need to rebut the state court's detailed factual findings. *See* 28 U.S.C. § 2254(e)(1). In this respect, of course, his conclusory assertion that Ms. Cortes's testimony "would have been exculpatory," Petition at 10, isn't evidence—let alone "clear and convincing" evidence.

*Second*, DeJesus cannot show prejudice. Even if we assume, in other words, that counsel should've ignored Ms. Cortes's contradictions and put her on the stand anyway, we don't think her testimony would've compelled the jury to acquit DeJesus. That's because Ms. Cortes admitted that there were about fifteen minutes—at or around the time of the shooting itself—when DeJesus was *not* with her. *See* Day 2 Hr'g Tr. at 11–12 ("Q: And at any point did you see [DeJesus] leave? A: "[DeJesus] left to go eat food because I didn't have a microwave at the time."); *id.* at 28 ("Q: Isn't it true that you told Mr. Mitchell that [DeJesus] was at his mother's house for approximately fifteen minutes? A: I don't recall the time."). The Eleventh Circuit has found no prejudice from a lawyer's failure to call an alibi witness because of just this kind of gap in the alibi witness's narrative. *See Lott v. Att'y Gen., Fla.*, 594 F.3d 1296, 1302 (11th Cir. 2010) ("Jones could only at best corroborate a small portion of the time for which Lott needed an alibi[.] . . . [R]easonable jurists would not debate the conclusion that locating Jones before trial would not have raised a reasonable probability of a not guilty verdict."). And, while Ms. Liles could've testified that she saw DeJesus during a portion of this interlude, *see* Day 1 Hr'g Tr. at 75–76 ("[Q:] [D]id you advise Mr. Winkler that you had seen [DeJesus] that evening at 10:30? A: Yes, I did, sir."), she (too) admitted that DeJesus was only with her for about fifteen minutes that night, *id.* at 82 ("Q: And you also told Mr. Mitchell that your son stayed at your

home for about fifteen minutes, true? A: Correct."). In any event, as we've said, DeJesus hasn't, in this Petition, challenged counsel's decision *not* to call Ms. Liles—so he's forfeited any argument that she might have saved this claim. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017) ("Habeas petitioners must specify the grounds on which they assert that they are entitled to relief. . . . [D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties." (cleaned up)).

But there's another, more fundamental problem with the alibi defense—one we've hinted at already. As both Mr. Walsh and Mr. Winkler testified, DeJesus's "alibi defense" would have required him to admit that he was within blocks of the shooting just after the shooting occurred. We cannot fault defense counsel for refusing to gamble on a dangerous alibi defense that, as we've seen, was riddled with inconsistencies and which, if unsuccessful, would've placed their client near the scene of the crime. *Cf. Denis v. United States*, 2009 WL 1563543, at *23 (S.D. Fla. June 2, 2009) (Moreno, J.) ("[C]onfidence in the outcome of this case is not undermined by the missing testimony of the alibi witness and evidence. The alibi defense proffered by Denis was not strong; the government's case was overwhelming; and, therefore . . . there is no reasonable probability that the result of the trial would have been different if a more thorough investigation had been conducted."), *aff'd*, 425 F. App'x 821 (11th Cir. 2011). We thus **DENY** Ground Seven, too, on the merits.

### EVIDENTIARY HEARING

And we won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). The claims we resolved under § 2254(d) require no factual development. *See Williams*, 529 U.S. at 444 ("The Court of Appeals rejected this claim on the merits under § 2254(d)(1), so it is unnecessary to reach the question whether § 2254(e)(2) would permit [or restrict] a hearing on the

claim."). As for the others, we don't need a hearing because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]" *Schriro*, 550 U.S. at 474.

**CERTIFICATE OF APPEALABILITY**

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Reasonable jurists would not find our resolution of the constitutional claims in Grounds Three (Subclaim One), Six, or Seven debatable or wrong. Nor would jurists of reason debate the correctness of our procedural rulings on the remaining claims. We thus **DENY** any request for a COA.

***

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition is **DISMISSED** as to the procedurally barred claims and **DENIED** on all other claims, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, this 27th day of April 2022.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Edwin DeJesus, *pro se*
        counsel of record